Richard D. McCune [Bar No. No.132124]
rdm@mccunelawgroup.com
Michele M. Vercoski [Bar No. 244010]
mmv@mccunelawgroup.com
Joshua A. Genzuk [Bar No. 322622]
jag@mccunelawgroup.com
Yasmin N. Younessi [Bar No. 331327]
yny@mccunelawgroup.com
MCCUNE LAW GROUP, APC
18565 Jamboree Road, Ste. 550
Irvine, CA  92612
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| BIG ROB'S PIZZERIA DBA JOSEPH VIANO; AND FRUIT CABOOSE CONCESSIONS, INC. a California Corporation, individually and on behalf of a class of similarly situated businesses,<br><br>Plaintiffs,<br><br>v.<br><br>MELROSE INDUSTRIES, PLC, a Foreign corporation; GKN AEROSPACE TRANSPARENCY SYSTEMS, INC. a California Corporation; GKN AEROSPACE SERVICES, LTD, a foreign corporation; and DOES 1-100,<br><br>Defendants. | Case No.:   8-26-cv-01363<br><br>**CLASS ACTION COMPLAINT FOR MONETARY DAMAGES**<br>1. Negligence<br>2. Negligence Per Se;<br>3. Strict Liability for Abnormally Dangerous Activity<br>4. Nuisance<br>5. Trespass<br>6. Premises Liability<br>7. Strict Liability – Design Defect<br>8. Strict Products Liability – Manufacturing Defect<br>9. Strict Products Liability – Failure to Warn<br>10. Negligence Against Product Defendants<br><br>**DEMAND FOR JURY TRIAL** |

-1-

## I.    INTRODUCTION

1.    Plaintiffs Big Rob's Pizzeria and Fruit Caboose Concessions, Inc., individually and on  behalf of itself and all others similarly situated within the proposed Class and prospective subclasses (Collectively, "Plaintiffs"), hereby bring this action against Defendant Melrose Industries, PLC,  GKN Aerospace Transparency Systems, Inc., and GKN Aerospace Services, LTD., and DOES 1-50 (hereinafter known as "Defendants") arising out of a dangerous, foreseeable, preventable, and near-catastrophic hazardous chemical emergency (the "Incident") originating from Defendants' aerospace manufacturing facility located at 12122 Western Avenue in Garden Grove, California (the "Facility").This action arises from Defendants' negligence, recklessness, and unlawful design, ownership, operation, maintenance, inspection, monitoring, storage, containment, cooling, pressure regulation, emergency planning, and control of a large-scale methyl methacrylate ("MMA") storage system, including a 34,000-gallon storage tank and associated cooling systems, safety valves, monitoring systems, containment infrastructure, alarms, and related industrial components.

2.    MMA is a volatile, hazardous, and highly flammable industrial chemical that, when stored in bulk, presents a known risk of self-heating, polymerization, temperature escalation, pressure buildup, vapor release, thermal runaway, rupture, fire, and explosion if it is not properly inhibited, cooled, monitored, vented, circulated, and controlled.

3.    Upon information and belief, the Incident was not an unavoidable accident. Rather, it arose from failures in Defendants' hazardous-chemical systems and safety management, including failures of cooling, failures of critical valve systems and/or access mechanisms, failures of monitoring or alarm systems, failures of emergency mitigation systems, and failures to implement adequate redundant and fail-safe protections despite known industry warnings concerning runaway-reaction hazards in bulk MMA storage.

4.    Long before the Incident, the dangers associated with large-scale MMA storage—including runaway reaction risk, temperature escalation, vapor release, pressure buildup, and catastrophic tank failure—were known or should have been known to entities

-2-

COMPLAINT FOR MONETARY DAMAGES

engaged in industrial chemical storage, aerospace manufacturing, hazardous-materials handling, and industrial safety management.

5. Public reporting and industry information available before the Incident warned that failures in cooling systems, circulation systems, relief-valve systems, monitoring systems, and emergency access systems can rapidly escalate MMA storage events into near-catastrophic emergencies, especially where redundancy, fail-safe protections, and contingency planning are absent or inadequate.

6. Upon information and belief, Defendants knew or should have known that safe bulk storage of MMA required robust cooling systems, continuous monitoring, effective emergency access, reliable pressure relief, operable safety valves, and redundant or fail-safe systems to prevent or mitigate catastrophic escalation if primary systems failed.

7. Further, Defendants knew that these potentially catastrophic failure storage tanks were situated in the middle and very close to homes, schools, freeways, businesses and other vulnerable populations.

8. Despite these known dangers, Defendants failed to implement adequate protective systems, failed to maintain and monitor critical infrastructure, failed to ensure operational redundancy, failed to provide adequate fail-safe mechanisms, and failed to protect the surrounding business community from a foreseeable hazardous materials emergency.

9. As a direct and proximate result, there was a critical failure of these systems resulting in the potential for immediate and potentially catastrophic harm to the surrounding communities if immediate community protective measures were not taken. To avoid a catastrophic incident involving MMA vapors and related hazardous conditions emanating from the Facility potentially harming thousands, the actions by Defendants caused mandatory evacuation orders, road closures, public safety restrictions, commercial shutdowns, business interruption, employee disruption, inventory loss, spoilage, restocking costs, loss of access, customer loss, commercial property interference, and

-3-

COMPLAINT FOR MONETARY DAMAGES

other damages affecting businesses, commercial tenants, employers, restaurants, retailers, and other business entities in Garden Grove, Stanton, Cypress, Anaheim, Buena Park, Westminster, and surrounding areas.

10.    Plaintiffs seek damages, equitable relief, injunctive relief, punitive damage where permitted, and all other available relief on behalf of themselves and the two proposed business classes alleged herein.

## II.    THE PARTIES

11.    Plaintiff Big Rob's Pizzeria is a DBA registered to owner and operator Joseph Viano, and at all relevant times herein was, a California business with its principal place of business at in Westminster, California, 92683, within the geographic area impacted by the chemical release.  Joseph Viano is a resident of Orange County, California.  Plaintiff was forced to cease business operations beginning on Thursday, May 21, 2026, through the extended holiday weekend, up until Monday, May 25, 2026, resulting in substantial business interruption, operational disruption, and loss of business revenue.  Although the business reopened late on Monday, surrounding hazardous conditions and community disruptions resulted in little to no customer activity.  Plaintiff's interruption to business caused significant economic harm.

12.    Plaintiff Fruit Caboose Concessions, Inc. is, and at all relevant times herein was, a corporation organized under the laws of the state of California with its principal place of business in Orange County, California, operating a concession at the Garden Grove Strawberry Festival within the geographic area impacted by a potential chemical release and within one mile of the evacuation area.  As a result of the Incident, Plaintiff Fruit Caboose Concessions, Inc.'s, business was substantially interrupted during the extended holiday weekend. Plaintiff suffered substantial business interruption damages, including the loss of substantial revenue.

13.    Defendant Melrose Industries PLC ("Melrose") is, and at all relevant times herein was, a public limited company  organized and existing under the laws of England and Wales, with its registered office located at 20 Colmore Circus Queensway,

-4-

COMPLAINT FOR MONETARY DAMAGES

Birmingham, B4 6AT, United Kingdom, and engaged in global aerospace manufacturing, industrial engineering, and related operational activities, including oversight and/or ownership of entities involved in the aerospace manufacturing operations and hazardous chemical systems alleged herein. Upon information and belief, Melrose exercised ownership, oversight, operational control, and/or supervisory authority over the Facility and the operations giving rise to the Incident alleged herein.

14. Defendant GKN Aerospace Transparency Systems, Inc. ("GKN ATS") is, and at all relevant times herein was, a corporation with its principal place of business and headquarters at or near 12122 Western Avenue in Garden Grove (the "Facility") and the chemical storage systems involved in the Incident alleged herein. Based on information and belief, GKN ATS is authorized to conduct business in the State of California and engaged in aerospace manufacturing operations involving the handling, storage, and use of industrial chemicals and hazardous materials. Upon information and belief, GKN ATS owned, operated, managed, maintained, and/or controlled the Facility.

15. Defendant GKN Aerospace Services Ltd. ("GKN Services") is, and at all relevant times herein was, a corporation organized and existing under the laws of England and Wales with its registered office and principal headquarters at 20 Colmore Circus Queensway, Birmingham, B4 6AT, United Kingdom, and engaged in aerospace manufacturing support, engineering, maintenance, operational management, inspection, safety, and related industrial services associated with aerospace manufacturing operations and hazardous chemical systems. Upon information and belief, GKN Services exercised engineering oversight, maintenance responsibilities, inspection responsibilities, safety-management authority, operational control, and/or supervisory authority over the Facility and the systems involved in the Incident.

16. Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 20 were the designers, manufacturers, assemblers, distributors, suppliers, sellers, installers, and/or component-part manufacturers of the 34,000-gallon MMA storage tank and related tank components involved in the Incident.

-5-

COMPLAINT FOR MONETARY DAMAGES

17.     Plaintiffs are informed and believe, and thereon allege, that DOES 21 through 40 were the designers, manufacturers, assemblers, distributors, suppliers, sellers, installers, programmers, inspectors, repairers, and/or service providers for the cooling systems, chillers, circulation systems, temperature-control systems, monitoring systems, alarms, instrumentation, and sensors intended to regulate the MMA storage system and prevent overheating, polymerization, or thermal runaway.

18.     Plaintiffs are informed and believe, and thereon allege, that DOES 41 through 60 were the designers, manufacturers, assemblers, distributors, suppliers, sellers, installers, inspectors, repairers, and/or service providers for the safety valves, relief valves, venting systems, emergency shutoff systems, containment infrastructure, and related safety hardware involved in the Incident.

19.     Plaintiffs are informed and believe, and thereon allege, that DOES 61 through 100 were maintenance contractors, industrial service providers, engineers, consultants, inspectors, monitoring vendors, installers, and/or other persons or entities who negligently designed, manufactured, inspected, monitored, serviced, repaired, calibrated, maintained, or controlled the tank, cooling system, safety valves, and associated hazardous-chemical infrastructure that failed or contributed to the Incident.

20.     Plaintiffs are presently unaware of the true names and capacities of said DOE Defendants and will amend this Complaint when their true identities are ascertained.

21.     At all times herein mentioned, each of the Defendants hereinabove was the agent, servant employee, partner, alter ego, aider and abettor, co-conspirator and/or joint venture of each of the remaining Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants.

### III.     **JURISDICTION AND VENUE**

22.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

COMPLAINT FOR MONETARY DAMAGES

1332(d), the Class Action Fairness Act ("CAFA"), because this action is a class action in which: (a) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) the proposed classes consist in the aggregate of at least 100 members; and (c) minimal diversity exists because at least one Plaintiff and/or putative class member is a citizen of a state different from at least one Defendant, including foreign Defendants Melrose Industries PLC and GKN Aerospace Services Ltd.

23. In determining the amount in controversy under CAFA, the claims of the individual class members are aggregated. Upon information and belief, the aggregate amount in controversy exceeds $5,000,000 because the Incident affected numerous businesses, commercial tenants, employers, restaurants, retailers, and other business entities across multiple Orange County communities during and around the Memorial Day holiday weekend, causing widespread business interruption, lost profits, lost revenue, employee-related losses, inventory loss, spoilage, restocking costs, loss of access, customer loss, closure damages, and related commercial losses expected to total far in excess of $5,000,000.

24. Upon information and belief, the proposed classes include far more than 100 businesses and other business entities located within the mandatory evacuation zone and the surrounding directly affected commercial areas.

25. CAFA jurisdiction is proper notwithstanding any contention that some class members and one or more Defendants may share California citizenship because minimal diversity, not complete diversity, is required under 28 U.S.C. § 1332(d), and at least one Defendant is a foreign citizen and/or a citizen of a state different from at least one Plaintiff or putative class member.

26. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within the State of California, purposefully availed themselves of the privilege of conducting business activities within California, and the acts, omissions, conduct, and injuries alleged herein arose from and relate directly to Defendants' activities within this District, including the ownership, operation,

-7-

COMPLAINT FOR MONETARY DAMAGES

maintenance, management, supervision, and control of the aerospace manufacturing facility and hazardous chemical systems located at or near 12122 Western Avenue in Garden Grove, California, where the Incident alleged herein occurred.

27.     This Court further has personal jurisdiction over Defendants Melrose Industries PLC and GKN Aerospace Services Ltd. because, upon information and belief, said Defendants exercised ownership, oversight, operational control, supervision, management, maintenance responsibilities, and/or direction over the Facility, hazardous chemical systems, safety procedures, maintenance protocols, and operations giving rise to the Incident alleged herein, and purposefully directed business activities toward the State of California such that the exercise of jurisdiction by this Court is consistent with traditional notions of fair play and substantial justice.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, omissions, and injuries giving rise to the claims asserted herein occurred within this District, Defendants transact business within this District, and the Facility that is the subject of this action is located within this District.

## IV.     FACTS COMMON TO ALL CLAIMS

29.     On or before May 21, 2026, a 34,000-gallon chemical storage tank located at Defendants' aerospace manufacturing facility at 12122 Western Avenue in Garden Grove (the "Facility") entered a dangerous condition and began venting methyl methacrylate ("MMA") vapor into the surrounding community (the "Incident").

30.     MMA is a volatile, hazardous, and highly flammable industrial chemical used in the production of acrylic resins and plastics for aerospace manufacturing and related industrial applications. In bulk storage, it presents known hazards including self-heating, polymerization, pressure buildup, vapor release, thermal runaway, rupture, fire, and explosion.

31.     The hazards associated with large-volume MMA storage were known or should have been known to Defendants long before the Incident. Those dangers included the risk that failure of cooling, circulation, pressure-relief, monitoring, inhibitor

COMPLAINT FOR MONETARY DAMAGES

management, and emergency access systems could rapidly escalate a tank upset into a widespread public emergency.

32.    Public reporting and industry information available prior to the Incident described years of warnings about runaway chemical reactions, the importance of effective cooling and relief systems, and the danger posed when facilities lack adequate backup and redundant systems to prevent escalation.

33.    Upon information and belief, Defendants knew or should have known that storing tens of thousands of gallons of MMA in close proximity to businesses, commercial corridors, public roadways, employers, restaurants, retailers, and surrounding business communities required robust and redundant cooling systems, effective alarms, operable safety valves, emergency response planning, and fail-safe engineering controls to ensure safety.

34.    Upon information and belief, one or more failures occurred in the tank system and associated infrastructure, including but not limited to cooling-system failure, failure of critical valves and/or valve access mechanisms, failure of monitoring or alarm systems, failure of emergency mitigation measures, and failure to provide adequate redundancy and fail-safe protections.

35.    Upon information and belief, once the Incident began, the tank and associated systems could not be safely and effectively controlled through ordinary internal means because critical systems, including valves and/or control access, were unavailable, impaired, or inoperable creating an immediate risk of catastrophic failure affecting the health and safety in a significant area surrounding the tanks.

36.    Publicly reported emergency response efforts indicated that responders were required to cool the tank externally while the tank remained in a dangerous condition and posed an ongoing threat of rupture, spill, or explosion.

37.    Upon information and belief, Defendants failed to adequately inspect, maintain, service, repair, monitor, test, calibrate, and safely operate the tank, cooling

-9-

COMPLAINT FOR MONETARY DAMAGES

systems, safety valves, pressure-relief systems, alarms, instrumentation, emergency-response systems, and related infrastructure.

38.    Upon information and belief, Defendants also failed to provide adequate backup, redundant, or fail-safe systems sufficient to prevent or mitigate the foreseeable consequences of primary-system failure.

39.    Following the Incident, emergency response agencies and public officials warned that the storage tank posed a substantial and ongoing danger to the surrounding community, including the risk that the tank could rupture, spill thousands of gallons of hazardous chemicals, and/or enter thermal runaway and explode.

40.    By the morning of May 22, 2026, mandatory evacuation orders and related public safety restrictions affected portions of Garden Grove, Stanton, Cypress, Anaheim, Buena Park, Westminster, and surrounding areas.

41.    On May 23, 2026, the Governor declared a State of Emergency in Orange County in connection with the Incident.

42.    The Incident occurred immediately before and during the Memorial Day holiday weekend, a period during which restaurants, retailers, and other business entities reasonably experience increased customer traffic and revenue.

43.    Plaintiff Big Rob's Pizzeria was forced to suspend operations from approximately May 21, 2026 through May 25, 2026 and suffered significant business interruption and revenue losses.

44.    Plaintiff Fruit Caboose Concessions, Inc. was allowed to continue business in connection with Garden Grove Strawberry Festival, even though they were within 1 mile of the evacuation zone. However, less than 50% of the usual number of visitors and customers attending the event specifically because of the danger and proximity to the storage tanks.

45.    Businesses both within and outside the formal evacuation perimeter were directly affected by the dangerous conditions, including by evacuation orders, emergency warnings, road closures, traffic restrictions, loss of access, interruption of operations,

-10-

COMPLAINT FOR MONETARY DAMAGES

customer loss, employee disruption, commercial property interference, inventory loss, spoilage, restocking costs, and interference with commercial use and enjoyment of property.

46.    The precise cause of the Incident, including the design and condition of the tank, the identity and specifications of the cooling system, the condition and operability of the safety valves, the existence or absence of redundancy systems, the inspection history, maintenance history, internal warnings, alarm history, prior incidents, regulatory compliance history, and product failures involved, is presently within Defendants' Government entities, and DOE Defendants' possession, custody, and control.

## V.    <u>CLASS ALLEGATIONS</u>

47.    Plaintiffs bring this action to seek equitable non-monetary and monetary relief as a class action pursuant to Rules 23(a), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following two proposed Classes:

**48.    Evacuation Zone Business Class:**

All business entities operating within the mandatory evacuation zone that were required to shut down their business.

**49.    Surrounding Area Business Class:**

All business entities operating outside the formal mandatory evacuation zone but within Garden Grove and the surrounding areas affected area who suffered business interruption as a result of the Incident and emergency response measures.

50.    Excluded from the Classes are Defendants, their officers and directors, any entity in which Defendants have a controlling interest, governmental entities, the Court and its staff, and immediate family members of judicial officers assigned to this action.

51.    Numerosity is satisfied because the members of the proposed Classes are so numerous that joinder is impracticable.

52.    Common questions of law and fact exist as to both Classes and predominate over individual questions, including without limitation:

COMPLAINT FOR MONETARY DAMAGES

a. whether Defendants owned, operated, managed, maintained, inspected, monitored, repaired, and/or controlled the Facility and hazardous chemical systems involved in the Incident;

b. whether Defendants knew or should have known of the risk of MMA runaway reaction, vapor release, rupture, fire, explosion, and large-scale commercial harm;

c. whether Defendants failed to implement adequate cooling, monitoring, pressure-relief, containment, emergency access, and redundant safety systems;

d. whether any tank, cooling system, valve, instrumentation, or related component was defectively designed, manufactured, installed, maintained, or serviced;

e. whether Defendants' acts or omissions caused or substantially contributed to the Incident and resulting evacuations, shutdowns, and disruptions;

f. whether members of the Classes were required to close due to the incident and evacuation order;

g. whether members of the Classes in the zone of impact, including located in Garden Grove, had businesses which were materially impacted by the incident and emergency response; and

h. the proper measure of class-wide relief.

53. Plaintiffs' claims are typical of the claims of the Classes because they arise from the same course of conduct, the same Incident, and the same resulting hazardous conditions and business losses.

54. Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel experienced in product liability, environmental harm, complex litigation and class action matters.

55. A class action is superior to individual litigation because common issues predominate, class treatment will conserve judicial resources, avoid duplicative litigation,

-12-

COMPLAINT FOR MONETARY DAMAGES

promote consistent adjudication, and provide an efficient mechanism for resolving the claims of the many affected businesses arising from the same Incident and common course of conduct.

## VI.    PRODUCT-RELATED DOE ALLEGATIONS

56.    Plaintiffs are informed and believe, and thereon allege, that one or more DOE Defendants designed, manufactured, marketed, distributed, sold, installed, inspected, repaired, maintained, serviced, calibrated, and/or supplied the 34,000-gallon MMA tank, the cooling and circulation systems, the temperature-control systems, the monitoring and alarm systems, the safety valves, relief valves, venting systems, and related components involved in the Incident.

57.    Plaintiffs are further informed and believe that one or more of these product-related DOE Defendants placed defective products into the stream of commerce, including products that were defectively designed, defectively manufactured, inadequately tested, improperly installed, insufficiently maintained, and/or sold without adequate warnings or instructions concerning MMA runaway hazards, cooling-system failure scenarios, valve-access failures, emergency-response limitations, and the need for redundancy and fail-safe protections.

58.    Plaintiffs are presently ignorant of the true names and capacities of the product-related DOE Defendants and will amend this Complaint when discovery reveals their identities.

59.    To the extent any Defendant contends that the Incident was caused in whole or in part by the failure of a tank, cooling system, valve, relief device, control system, monitoring device, or other component, Plaintiffs allege in the alternative that such failures were caused by the acts and omissions of the DOE Product Defendants.

## VII.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Negligence)**

**(Against All Defendants)**

-13-

60. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

61. Defendants owed Plaintiffs and the Classes a duty to exercise reasonable care in the ownership, design, operation, inspection, maintenance, monitoring, storage, cooling, containment, repair, supervision, and management of hazardous chemicals, hazardous-chemical systems, industrial equipment, and related operations at the Facility.

62. Defendants breached those duties by, among other things, failing to properly design, operate, inspect, maintain, monitor, cool, contain, repair, supervise, and manage the hazardous chemical systems and operations at the Facility; failing to maintain operable safety systems and critical valves; and failing to implement adequate backup, redundant, and fail-safe protections despite the known danger of runaway reaction and catastrophic escalation.

63. As a direct and proximate result of Defendants' negligence, Plaintiffs and the Classes suffered damages including, without limitation, business interruption damages, lost revenue, lost profits, lost opportunities, employee-related disruptions, inventory spoilage, access-related losses, commercial property interference, loss of use, and related economic damages.

## VIII.    SECOND CLAIM FOR RELIEF
### (Negligence Per Se)
### (Against All Defendants)

64. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

65. At all relevant times, Defendants were subject to various statutes, regulations, ordinances, safety requirements, environmental regulations, hazardous materials handling requirements, fire codes, occupational safety standards, and industry safety obligations governing the storage, handling, containment, monitoring, maintenance, and use of hazardous chemicals and industrial chemical systems.

-14-

COMPLAINT FOR MONETARY DAMAGES

66.    Upon information and belief, Defendants violated one or more statutes, regulations, ordinances, and/or safety requirements, including but not limited to California Health and Safety Code provisions, Cal/OSHA regulations, environmental regulations, hazardous materials handling requirements, fire safety regulations, and other applicable laws and regulations designed to protect the public from hazardous chemical releases and toxic exposure.

67.    Plaintiffs and the Class belong to the class of persons intended to be protected by said statutes, regulations, ordinances, and safety requirements, and the harms suffered by Plaintiffs and the Class are the type of harms those laws were intended to prevent.

68.    Defendants' violations constituted negligence per se and were a direct and proximate cause of Plaintiffs' damages.

## IX.    THIRD CLAIM FOR RELIEF

### (Strict Liability for Ultrahazardous Activity)

### (Against All Defendants)

69.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

70.    At all relevant times, Defendants engaged in ultrahazardous and/or abnormally dangerous activities, including the storage, handling, maintenance, containment, and use of large quantities of volatile, hazardous, and highly flammable industrial chemicals, including methyl methacrylate, in close proximity to residential communities, businesses, schools, and members of the public.

71.    The risks associated with Defendants' hazardous chemical operations could not be eliminated through the exercise of reasonable care and created a foreseeable and substantial risk of catastrophic harm.

72.    As a direct and proximate result of Defendants' breaches and conduct, Plaintiffs and the Class suffered harms and losses including, but not limited to, business interruption damages, operational shutdowns, loss of revenue, loss of profits, loss of business opportunities, employee-related disruptions, loss of commercial use and access

COMPLAINT FOR MONETARY DAMAGES

to property, inventory spoilage and loss of perishable goods, contamination concerns, property-related damages, loss of commercial desirability, reputational harm, restoration and restocking expenses, and other economic and commercial damages. Defendants are therefore strictly liable for the damages suffered by Plaintiffs and the Class.

## X.   FOURTH CLAIM FOR RELIEF
### (Nuisance)
### (Against All Defendants)

73.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

74.   Defendants, by and through their acts and omissions, created, caused, permitted, contributed to, and/or maintained a condition that was harmful to health, offensive to the senses, obstructive to the free use of property, and substantially interfered with Plaintiffs' and the Class members' use and enjoyment of their homes, residences, businesses, workplaces, schools, properties, and surrounding communities.

75.   The chemical release, evacuation orders, hazardous vapors, odors, contamination concerns, public safety threats, and ongoing risk of fire, explosion, thermal runaway, and toxic exposure interfered with the comfort, safety, health, peace, occupancy, use, and enjoyment of property throughout portions of Garden Grove, Cypress, Stanton, Anaheim, Buena Park, Westminster, and surrounding impacted communities.

76.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Classes are entitled to recover all damages and other relief permitted under California law.

## XI.   FIFTH CLAIM FOR RELIEF
### (Trespass)
### (Against All Defendants)

77.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

78.   Defendants caused hazardous chemical vapors, fumes, particulates, contaminants, and/or other toxic substances to physically invade, enter upon migrate onto,

COMPLAINT FOR MONETARY DAMAGES

and interfere with Plaintiffs' and the Class members' real property and possessory interests.

79.    The intrusion of hazardous chemicals and contaminants onto and into Plaintiffs' and the Class members' businesses, workplaces, and properties was intentional, negligent, reckless, and/or the natural and foreseeable consequence of Defendants' conduct.

80.    As a direct and proximate result of Defendants' trespass, Plaintiffs and the Class suffered damages including, but not limited to, evacuation-related expenses, displacement from businesses, loss of use and enjoyment of property, lost wages and income, business interruption damages, property-related damages, diminished property value, stigma-related damages, and other economic and non-economic damages. Plaintiffs and the Class are entitled to recover all damages permitted under California law.

## XII.    SIXTH CLAIM FOR RELIEF
### (Premises Liability)
### (Against All Defendants)

81.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

82.    At all relevant times herein, Defendants owned, leased, operated, occupied, controlled, managed, maintained, supervised, inspected, and/or were otherwise responsible for the Facility, and the hazardous chemical storage systems, industrial equipment, tanks, containment systems, and related operations located thereon.

83.    Defendants owed Plaintiffs and the Class a duty to exercise reasonable care in the ownership, maintenance, inspection, operation, supervision, repair, monitoring, and control of the Facility so as to avoid exposing surrounding residents, renters, workers, businesses, property owners, and members of the public to unreasonable risks of harm.

84.    Defendants knew, or reasonably should have known, that the storage, containment, and handling of large quantities of MMA and other hazardous chemicals at the Facility created a dangerous condition on the property and posed a foreseeable risk of

-17-

chemical release, toxic exposure, fire, explosion, environmental contamination, evacuation, bodily injury, property damage, and economic harm to surrounding communities.

85.     Defendants breached their duties by negligently, recklessly, and/or carelessly owning, maintaining, inspecting, monitoring, supervising, repairing, operating, and controlling the Facility and the hazardous chemical systems located thereon, thereby allowing hazardous chemicals and toxic vapors to escape into the surrounding community.

86.     As a direct and proximate result of Defendants' conduct and the dangerous condition of the Facility, Plaintiffs and the Classes suffered damages including, but not limited to, evacuation-related losses, displacement from businesses, business interruption damages, loss of income and revenue, loss of use and enjoyment of property, and other economic and non-economic damages.

## XIII.   SEVENTH CLAIM FOR RELIEF
### (Strict Products Liability – Design Defect)
### (Against DOE Product Defendants)

87.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

88.     The tank, cooling system, circulation system, pressure-relief system, safety valves, monitoring systems, alarms, and/or related components involved in the Incident were designed, manufactured, distributed, sold, installed, serviced, and/or supplied by DOE Product Defendants.

89.     Said products were defectively designed in that they failed to perform as safely as an ordinary user would expect when used in an intended or reasonably foreseeable manner, and/or the risks inherent in the design outweighed the benefits of the design.

90.     The design defects include, without limitation, inadequate cooling capacity, inadequate redundancy, inadequate emergency access, inadequate pressure-relief protection, inadequate monitoring functionality, inadequate fail-safe design, and/or

-18-

COMPLAINT FOR MONETARY DAMAGES

inadequate ability to safely control MMA in the event of system upset or temperature escalation.

91. As a direct and proximate result of said design defects, Plaintiffs and the Classes suffered the damages alleged herein.

## XIV.   EIGHTH CLAIM FOR RELIEF

### (Strict Products Liability – Manufacturing Defect)

### (Against DOE Product Defendants)

92. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

93. The products described above contained one or more manufacturing defects when they left the possession or control of DOE Product Defendants.

94. Said products differed from their intended design and/or from other ostensibly identical units in a manner that rendered them unsafe for their intended or reasonably foreseeable use.

95. As a direct and proximate result of said manufacturing defects, Plaintiffs and the Classes suffered the damages alleged herein.

## XV.   NINTH CLAIM FOR RELIEF

### (Strict Products Liability – Failure to Warn)

### (Against DOE Product Defendants)

96. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

97. DOE Product Defendants knew or should have known that the products involved in the Incident posed significant dangers, including the risk of MMA overheating, runaway reaction, valve/access failure, cooling-system failure, and catastrophic escalation.

98. DOE Product Defendants failed to provide adequate warnings and instructions regarding the dangers, limitations, maintenance requirements, emergency-

-19-

response limitations, and need for redundancy and fail-safe protections associated with their products.

99. As a direct and proximate result of said failure to warn, Plaintiffs and the Classes suffered the damages alleged herein.

## XVI. TENTH CLAIM FOR RELIEF

### (Negligence Against Product Defendants)

### (Against DOE Product Defendants)

100. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

101. DOE Product Defendants owed a duty to exercise reasonable care in the design, manufacture, distribution, installation, inspection, servicing, maintenance, repair, calibration, and warning of the products involved in the Incident.

102. DOE Product Defendants breached those duties by negligently designing, manufacturing, installing, servicing, repairing, inspecting, calibrating, maintaining, and/or warning regarding said products.

103. As a direct and proximate result of those breaches, Plaintiffs and the Classes suffered the damages alleged herein.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, respectfully request:

a. An Order certifying the proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Damages in an amount to be determined at trial;

c. Compensatory, consequential, special, and economic damages, including business interruption damages, lost profits, lost revenue, operational losses, restoration and restocking costs, inventory losses, commercial losses, and other damages according to proof;

d. Restitution and disgorgement as permitted by law;

-20-

COMPLAINT FOR MONETARY DAMAGES

e. Attorneys' fees, as the law allows.

f. An award of pre- and post-judgment interest on damages.

g. An award of costs of suit.

h. Punitive and/or exemplary damages, as the law allows.

i. Plaintiffs be granted any other appropriate relief this Court may determine as just, equitable, and proper.

j. Injunctive and equitable relief requiring Defendants to implement and maintain appropriate safety, inspection, monitoring, maintenance, containment, remediation, and hazardous materials handling procedures sufficient to protect businesses and commercial communities; and

k. Such other and further relief as the Court deems just and proper.

Dated:  May 28, 2026                    **MCCUNE LAW GROUP, APC**

                                        By:    */s/ Michele M. Vercoski*
                                               Richard D. McCune
                                               Michele M. Vercoski
                                               Joshua A. Genzuk
                                               Yasmin N. Younessi
                                               Attorneys for Plaintiff and Class

COMPLAINT FOR MONETARY DAMAGES

## JURY DEMAND

Plaintiffs and Class hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  May 28, 2026                    **MCCUNE LAW GROUP, APC**


By:     */s/ Michele M. Vercoski*
        Richard D. McCune
        Michele M. Vercoski
        Joshua A. Genzuk
        Yasmin N. Younessi
        Attorneys for Plaintiff and Class

-22-

COMPLAINT FOR MONETARY DAMAGES